UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANTHONY F. KRESS,                                :        CV:12-06247(JS)(ETB)
                                                 :
                        Plaintiff,               :        AMENDED COMPLAINT
        - against -                              :
                                                 :        **JURY TRIAL**
COUNTY OF SUFFOLK, SUFFOLK COUNTY                :        **DEMANDED**
POLICE DEPARTMENT, SCPD OFFICER                  :
FREDERICK J. MIGNONE and SCPD SERGEANT            :
O'SHEA (in their official and individual capacities) :
                                                 :
                        Defendants.              :
------------------------------------------------------------------X

Plaintiff, ANTHONY F. KRESS, by his attorneys SCOTT MICHAEL MISHKIN, P.C., complaining of the Defendants, allege as follows:

## PRELIMINARY STATEMENT

This matter is brought pursuant to (1) 42 U.S.C. § 1983 et seq. (hereinafter referred to as "§1983") due to Defendants' deprivation of Plaintiff's First, Eighth and Fourteenth Amendment rights; (2) the tort of false arrest; (3) unlawful imprisonment; (4) prima facie tort; (5) negligence; (6) gross negligence; (7) assault and battery; and (8) against County of Suffolk (hereinafter referred to as "County") and Suffolk County Police Department (hereinafter referred to as "SCPD") for negligent hiring, retention, and supervision of its employees and agents.

## JURISDICTION

FIRST:      The jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1331, as plaintiffs bring this action as a federal question under 42 USC §1983.

SECOND: The Court also has supplemental jurisdiction over this case pursuant to 28 U.S.C. §1367(a), as plaintiff's New York State claims form part of the same case and controversy.

## VENUE

THIRD: The unlawful practices alleged below were committed within Suffolk County in the State of New York.

FOURTH: At the time of the unlawful practices, plaintiff was a resident of Suffolk County in the Eastern District of the United States District Court of New York.

FIFTH: The County of Suffolk is a municipality with offices located at the H. Lee Dennison Building, 100 Veterans Memorial Highway, in Hauppauge, New York, County of Suffolk.

SIXTH: The SCPD is a municipal police force with offices located at 30 Yaphank Avenue, Yaphank, New York, in the County of Suffolk.

SEVENTH: SCPD Police Officer Frederick J. Mignone (hereinafter referred to as "Mignone"), acting in his official and individual capacities, maintains a business address of 400 Middle Country Road, Selden, New York, in the County of Suffolk.

EIGHTH: SCPD Sergeant O'Shea (hereinafter referred to as "O'Shea"), acting in his official and individual capacities, maintains a business address of 400 Middle Country Road, Selden, New York, in the County of Suffolk.

NINTH: This court is hereby the proper venue under 28 U.S.C. §1391(b).

## PARTIES

TENTH: Anthony F. Kress (hereinafter referred to as "Plaintiff") was deprived of his constitutional rights, and was subjected to various torts, by the County, SCPD, Mignone and O'Shea.

ELEVENTH: The County, SCPD, Mignone and O'Shea directly participated in the conduct complained of by plaintiff.

TWELVTH: Mignone is an employee of the County and SCPD, who, at the time of the unlawful practices complained of herein, was a Police Officer at defendant, and is named in his official capacity because he knew, or should have known, that his, the County's, and SCPD's, ongoing willful and malicious actions against the plaintiff were in violation of plaintiff's constitutional rights.

THIRTEENTH: O'Shea is an employee of the County and SCPD, who, at the time of the unlawful practices complained of herein, was a Sergeant at defendant, and is named in his official capacity because he knew, or should have known, that his, the County's, and SCPD's ongoing willful and malicious actions against the plaintiff were in violation of Plaintiff's constitutional rights.

## FACTS

FOURTEENTH: On December 31, 2011, plaintiff was viewing a car accident scene at Horseblock road, in Medford, New York.

FIFTEENTH: The scene of the car accident was an area that bothered plaintiff because two lanes merge into one lane and as a result often moving vehicles cut each other off resulting in car accidents and upon information and belief, nothing had been done to correct this road condition.

SIXTEENTH: Plaintiff's son advised plaintiff of this car accident at Horseblock road, in Medford, New York and plaintiff decided to go the scene and take pictures of the accident with his daughter's new camera to enclose with a letter to the appropriate Town officials to have this road conditioned remedied.

SEVENTEENTH: With that, plaintiff, took his son and daughter, first for plaintiff to purchase a Lotto ticket and then to the accident scene.

EIGHTEENTH: When plaintiff arrived near the accident he and his children got out of the car and joined some other civilian people that were standing near the accident scene.

NINETEENTH: At the accident scene there was a man with a video camera and another man with a still camera.

TWENTY: Also at the accident scene on the other side of marked off yellow tape, were defendants.

TWENTY FIRST: Upon information and belief, the photographs taken by the individuals with the camera and video camera were later provided to News12 Long Island.

TWENTY SECOND: When plaintiff arrived at the accident scene, as described. yellow police tape marked off the perimeter of the accident scene in an "L" shape. The police were on the inside of the yellow tape and plaintiff and the other individuals stood on the outside of the marked yellow police tape.

TWENTY THIRD: There were no ambulances at the scene.

TWENTY FOURTH: Plaintiff believes there were three Suffolk County Police marked patrol cars and one Suffolk County Police Emergency Services truck type vehicle.

TWENTY FIFTH: At all times while at the scene, plaintiff never crossed over the yellow police tape that marked the accident scene. Plaintiff was always outside the police perimeter.

TWENTY SIXTH: While standing outside of the yellow marked scene, plaintiff, as was the other, upon information and belief, professional photographer, took pictures of the accident scene.

TWENTY SEVENTH: While engaged in this lawful activity, O'Shea, who was behind the marked tape, shouted and cursed at plaintiff telling him he could not stand where he was standing.

TWENTY EIGHTH: As plaintiff did not want to encounter any problems with defendants, he decided to leave the scene and walk back to his car.

TWENTY-NINTH: Plaintiff then said to his son "lets go."

THIRTY: Plaintiff took a few pictures with his daughters new camera.

THIRTY FIRST: That was when defendant O'Shea became absolutely nasty and told plaintiff he could not take any pictures.

THIRTY SECOND: O'Shea told plaintiff in a belligerent manner that if he took another picture he would arrested.

THIRTY THIRD: Plaintiff then turned around and was getting ready to leave the scene, and said to his son that the way O'Shea just spoke to us, sometimes the police wonder why people say they're scumbags.

THIRTY FOURTH: Plaintiff heard O'Shea say "I have had enough" and threw his clipboard to the ground.

THIRTY FIFTH: Plaintiff then saw O'Shea and Mignone another defendant police officer running towards him.

THIRTY SIXTH: Plaintiff then said to his son "I didn't take another picture."

THIRTY SEVENTH: One of defendant's police officers approached plaintiff's son and pushed him while upon information and belief Mignone came in front of plaintiff and punched him square in his upper chest that took plaintiff's breath away.

THIRTY EIGHTH: At the time plaintiff was being battered and assaulted by upon information and belief Mignone, another defendant's police officer was behind plaintiff and was threw plaintiff to the ground.

THIRTY NINTH: Once plaintiff was on the ground, upon information and belief, Mignone began digging his knee into plaintiff's neck.

FORTY: Plaintiff was screaming of the pain in his neck due to his diagnosed disability of two herniated discs in his neck, and told defendants that he had a neck injury.

FORTY FIRST: Plaintiff was screaming "my neck my neck what is the matter with you."

FORTY SECOND: Then one of the other defendant's police officers went on top of plaintiff.

FORTY THIRD: Defendants were telling plaintiff to stop resisting, to which plaintiff replied he wasn't resisting.

FORTY FOURTH: Defendants then told plaintiff let his arms go, all while plaintiff's arms were underneath him while the defendant who was on top of him. Plaintiff couldn't move his arms.

FORTY FIFTH: Then defendant O'Shea told plaintiff to stop resisting, and plaintiff again said he was not resisting, that the defendant was on top of him and that he couldn't move and that his neck was killing him.

FORTY SIXTH: The defendant officer got off of plaintiff and that's when plaintiff was able to place to his arms to his side.

FORTY SEVENTH: Plaintiff's hands were then handcuffed by the defendant officer who had been on top of him.

FORTY EIGHTH: Then O'Shea and the defendant officer then picked up plaintiff.

FORTY NINTH: Plaintiff was in shock and in physical pain.

FIFTY: While O'Shea was screaming, cursing and berating plaintiff, with saliva coming out of his mouth, a big, tall, heavy set male, who was in plain cloths, also started screaming at plaintiff and both were on the side of plaintiff.

FIFTY FIRST: Plaintiff feared for his life at this point, as he had done nothing wrong to be getting arrested.

FIFTY SECOND: Plaintiff was not yelling at any of the defendants.

FIFTY THIRD: Plaintiff was then put in the front seat of a police car by upon information and belief Mignone.

FIFTY FOURTH: While being put in the police car, upon onformation and belief, Mignone started the car and told plaintiff he was getting arrested and began he yelling and cursing at plaintiff.

FIFTY FIFTH: Plaintiff responded and told, upon information and Mignone that he did nothing wrong, but Mignone kept screaming and cursing plaintiff.

FIFTY SIXTH: While driving the police car, Mignone took his hand and starting slamming it on the dashboard really loud, cursing plaintiff, calling plaintiff a scumbag and a fucking asshole.

FIFTY SEVENTH: Plaintiff feared for his life.

FIFTY EIGHTH: During this abuse, upon information and belief, Mignone's cellular telephone rang. Mignone answered it and during the conversation, Mignone stated that he had a prisoner in the car, a guy was taking pictures, and that plaintiff was a fucking scumbag, and that plaintiff was an asshole who was taking pictures.

FIFTY NINTH: Mignone was yelling at plaintiff the entire ride to the police station. Plaintiff was virtually shaking in the car, scared for his life.

SIXTY: All three defendants while acting under color of state law, deprived plaintiff of his First Amendment right to Free Speech, and violated §1983.

SIXTY FIRST: Defendants' actions against plaintiff amounted to an assault in that plaintiff feared for his life and feared he was in imminent danger of being attacked again.

SIXTY SECOND: Defendants' actions against plaintiff amounted to a battery in that their unlawful touching of plaintiff was an intentional act, it was done without plaintiff's consent, and the touching was harmful or offensive to plaintiff.

SIXTY THIRD: Defendants' physical attack and verbal abuse of plaintiff was egregious, shocking, and evidenced a complete and deliberate disregard for plaintiff's safety and well-being, and therefore deprived plaintiff's rights to be free from cruel and inhuman punishment under the Eighth Amendment of the constitution, and violated §1983.

8

SIXTY FOURTH: At no time was plaintiff ever read his Miranda Rights while he was in police custody, despite the fact that defendant told plaintiff he was under arrest at the scene.

SIXTY FIFITH: Defendants' intentionally or by gross negligence disregarded plaintiff's Miranda Rights.

SIXTY SIXTH: Once plaintiff arrived at the police precinct, he was experiencing severe chest pains, felt light headed, was sweating, shaking, could hardly stand and was petrified.

SIXTY SEVENTH: Plaintiff told defendant's Sergeant at the Precinct that he could hardly stand, and that he was light headed.

SIXTY EIGHTH: Defendant's Sergeant asked plaintiff if was all right, to which plaintiff stated no, that he was punched in the chest, that he was having pain in his chest, that he felt light headed, that his heart was racing, and he felt weak.

SIXTY NINTH: Defendant's Sergeant asked plaintiff if he needed hospital attention, to which Plaintiff said yes and that he was worried for himself.

SEVENTY: Mignone then stated to plaintiff that plaintiff was lucky he was not wearing street clothes and wasn't on the other side of that tape with plaintiff or "I would have beat the fucking shit out of you."

SEVENTY FIRST: Plaintiff was extremely fearful of Mignone.

SEVENTY SECOND: Defendant's Sergeant then stated "we have to follow protocol," and Mignone drove plaintiff to the hospital, along with another one of defendant's officers.

SEVENTY THIRD:   During the ride to the hospital, plaintiff was light headed and striving to breath out of his mouth, all while being absolutely fearful of Mignone.

SEVENTY FOURTH:   Plaintiff remained handcuffed the entire time from when he was at the accident scene, to the precinct, to the hospital and finally to the hospital bed.

SEVENTY FIFTH:   While plaintiff was detained by defendants against his will and without his consent, he was maliciously, recklessly, negligently and/or intentionally handcuffed and unlawfully imprisoned by defendants.

SEVENTY SIXTH:   Plaintiff was subjected to unlawful imprisonment in that plaintiff was subjected to forced constraint and detention by defendants, and was deprived of his personal liberty, without warrant or probable cause.

SEVENTY SEVENTH:   Defendants unlawful touching of plaintiff by punching him in the chest, and forcefully jamming a knee into plaintiff's neck, was without justification or excuse, and was an assault and battery of plaintiff.

SEVENTY EIGHTH:   Defendants unlawful touching and unwarranted forced constraint and detention of plaintiff, while acting under color of state law, constituted cruel and inhuman treatment and violated plaintiff's Eighth Amendment rights pursuant to §1983.

SEVENTY NINTH:   Upon arrival at the Hospital and while plaintiff's hands were still handcuffed behind his back, he was taken to the emergency room and placed on a bed where his one arm was handcuffed to the bed.

EIGHTY:   Plaintiff advised Hospital staff that he was very dizzy, light headed, his heart was racing and that he was feeling pain were the Mignone punched him in the chest.

EIGHTY FIRST:   Plaintiff was then hooked up to monitors and given medication.

EIGHTY SECOND:   Plaintiff was also bruised due being assaulted and battered by defendants.

EIGHTY THIRD:   At the hospital plaintiff was very upset and concerned for his family as well.

EIGHTY FOURTH:   Plaintiff remained in the remained in the hospital for four and half hours.

EIGHTY FIFTH:   Another plain clothes defendant officer took pictures of plaintiff at the hospital.

EIGHTY SIXTH:   Mignone took away plaintiff's cellular telephone from him at the hospital, in fact when Mignone saw plaintiff on speaking on his telephone, where plaintiff was advising his wife where he was, he told plaintiff to get off the phone, that plaintiff was not suppose to have it, and then grabbed it out of plaintiff's hand.

EIGHTY SEVENTH:   Prior to defendants taking away plaintiff's cellular telephone, plaintiff asked hospital staff if he could telephone his wife, and was told that defendants instructed the hospital, he could not.

EIGHTY EIGHTH:   Plaintiff then asked defendant's officer he could telephone his wife and family to advise them that he was in the hospital. Defendant's officer said eventually.

EIGHTY NINTH:   Despite plaintiff's requests to have his telephone and his daughter's camera returned, to this day defendants have refused to do so.

NINETY:   This unlawful deprivation of plaintiff's property without Due Process of the law constitutes a violation of plaintiff's Fourteenth Amendment rights pursuant to §1983.

NINETY FIRST:  While plaintiff was detained by defendants against his will and without his consent, defendants subjected plaintiff to unnecessary serious mental abuse, in that they would not release his handcuffs after an extended amount of time, and screamed obscenities at him, which constitutes cruel and inhuman punishment, in violation of Plaintiff's Eighth Amendment rights.

NINETY SECOND:  Plaintiff was then admitted to the hospital and given medication for his anxiety and chest pains.

NINETY THIRD:  Plaintiff was then given desk appearance tickets by Mignone and then Mignone left the hospital.

NINETY FOURTH:  One ticket was alleged resisting arrest and the other was for alleged interference with a police investigation.

NINETY FIFTH:   Mignone, while acting under color of state law, willfully and with the intent to cause plaintiff harm, deprived plaintiff of his rights and privileges or immunities secured by the constitution or laws of the United States.

NINETY SIXTH:   Mignone, while acting under color of state law, had personal involvement in depriving plaintiff of his Fourteenth Amendment equal protection rights, and is therefore liable for plaintiff's claims under §1983.

NINETY SEVENTH: Mignone, while acting under color of state law, had personal involvement in depriving plaintiff of his Eighth Amendment right of being free from cruel and inhuman punishment, and is therefore liable for plaintiff's claims under §1983.

NINETY EIGHTH:   Mignone, while acting under color of state law, had personal involvement in depriving plaintiff of his right to Free Speech under the First Amendment, thus violating §1983.

NINETY NINTH: Mignone, while acting under color of state law, aided, abetted, incited, compelled and/or coerced the acts against plaintiff that are forbidden under the constitution or laws of the United States.

ONE HUNDRED: Mignone actually participated in the conduct giving rise to plaintiff's claims, and is thereby individually and officially liable for his willful and malicious treatment of Plaintiff which deprived him of his rights under the constitution or laws of the United States.

ONE HUNDRED FIRST: Mignone is named in his official capacity because he knew or should have known that his and defendants' ongoing, willful and malicious actions against plaintiff violated the constitutional and statutory rights of plaintiff.

ONE HUNDRED SECOND: Mignone personally acted under color of state law and his adverse actions bear a proximal relation to the harm claimed to have been suffered by plaintiff.

ONE HUNDRED THIRD: As a result, Mignone has waived his qualified immunity.

ONE HUNDRED FOURTH: Mignone directly participated in conduct complained of by plaintiff, while acting under color of state law, and his conduct deprived plaintiff of his rights, privileges or immunities secured by the constitution or laws of the United States.

ONE HUNDRED FIFTH: O'Shea, while acting under color of state law, willfully and with the intent to cause plaintiff harm, deprived plaintiff of his rights and privileges or immunities secured by the constitution or laws of the United States.

ONE HUNDRED SIXTH: O'Shea, while acting under color of state law, had personal involvement in depriving plaintiff of his Fourteenth Amendment equal protection rights, and is therefore liable for plaintiff's claims under §1983.

ONE HUNDRED SEVENTH: O'Shea, while acting under color of state law, had personal involvement in depriving plaintiff of his Eighth Amendment right of being free from cruel and inhuman punishment, and is therefore liable for plaintiff's claims under §1983.

ONE HUNDRED EIGHTH: O'Shea, while acting under color of state law, had personal involvement in depriving plaintiff of his right to Free Speech under the First Amendment, thus violating §1983.

ONE HUNDRED NINTH: O'Shea, while acting under color of state law, aided, abetted, incited, compelled and/or coerced the acts against plaintiff that are forbidden under the constitution or laws of the United States.

ONE HUNDRED TENTH: O'Shea actually participated in the conduct giving rise to plaintiff's claims, and is thereby individually and officially liable for his willful and malicious treatment of plaintiff which deprived him of his rights under the constitution or laws of the United States.

ONE HUNDRED ELEVENTH: O'Shea is named in his official capacity because he knew or should have known that his and defendants' ongoing, willful and malicious actions against Plaintiff violated the constitutional and statutory rights of plaintiff.

ONE HUNDRED TWELFTH: O'Shea personally acted under color of state law and his adverse actions bear a proximal relation to the harm claimed to have been suffered by plaintiff.

ONE HUNDRED THIRTEENTH: As a result, O'Shea has waived his qualified immunity.

ONE HUNDRED FOURTEENTH:  O'Shea directly participated in conduct complained of by plaintiff, while acting under color of state law, and his conduct deprived plaintiff of his rights, privileges or immunities secured by the constitution or laws of the United States.

ONE HUNDRED FIFTEENTH:  The SCPD and its Police Officers maintain a practice of persistent failure to implement or follow SCPD procedures and policies that would ensure competent and qualified performance of the duties and responsibilities of its employees.

ONE HUNDRED SIXTEENTH:  Such a practice of ignoring policies and procedures caused plaintiff to be denied his constitutional rights not to be punished or deprived of liberty without Due Process and Equal Protection under the law.

ONE HUNDRED SEVENTEENTH:  Such a practice of ignoring policies and procedures caused plaintiff to be denied his Eighth Amendment constitutional right to be free from cruel and inhuman punishment.

ONE HUNDRED EIGHTEENTH:  By the SCPD's deliberate indifference and recklessness in executing its procedures for a proper arrest, plaintiff was deprived of his property interest of receiving the government mandated benefit of proper and adequate police services, which would have precluded the cruel and inhuman treatment of plaintiff by SCPD.

ONE HUNDRED NINETEENTH:  By the SCPD's deliberate indifference and recklessness in executing its policies and procedures, plaintiff was deprived of his property interest in his cellular telephone and his camera, which have not been returned.

ONE HUNDRED TWENTY: By the SCPD's deliberate indifference and recklessness in executing its procedures for securing an accident scene, plaintiff was deprived of his liberty interest to be free from being attacked, punched, and screamed obscenities at, by the SCPD.

ONE HUNDRED TWENTY FIRST: Plaintiff was deprived of these property and liberty interests without due process of law because plaintiff's interest in being free from unprovoked physical and mental attack was compromised in that he feared for his life subsequent to the attack.

ONE HUNDRED TWENTY SECOND: Defendants had a duty to properly execute their duties and responsibilities as employees of the SCPD.

ONE HUNDRED TWENTY THIRD: Defendants breached their duty without excuse when they intentionally, unreasonably, and with conscious disregard to the outcome of their actions, failed to apprise plaintiff of his Miranda Rights; negligently handcuffed and imprisoned plaintiff; punched plaintiff in the chest while unprovoked; and subjected plaintiff to unnecessary serious physical and mental abuse, amounting to gross negligence by defendants.

ONE HUNDRED TWENTY FOURTH: It was reasonably foreseeable that by defendants' breach of duties, plaintiff would be deprived of his constitutional rights.

ONE HUNDRED TWENTY FIFTH: But for the defendants' failure to execute their duty as police officers properly, plaintiff would not have been subjected to serious mental abuse and a deprivation of his constitutional rights.

ONE HUNDRED TWENTY SIXTH:	Defendants County and SCPD, in hiring Mignone and O'Shea, had a duty to fully investigate the background and qualifications of these individuals to be employed as police officers by SCPD.

ONE HUNDRED TWENTY SEVENTH:	Defendants breached that duty when they intentionally, unreasonably, and with conscious indifference to the outcome of their actions, failed to properly screen or otherwise determine each man's fitness for employment at the SCPD.

ONE HUNDRED TWENTY EIGHTH:	It was reasonably foreseeable that by defendants breach of duties, plaintiff would suffer harm.

ONE HUNDRED TWENTY NINTH:	But for SCPD's breach of its duty, Mignone and O'Shea would not have been hired, and qualified police officers would have been present in their stead and would not have unlawfully and negligently falsely imprisoned plaintiff, committed assault and battery against plaintiff or deprived him of his rights under the Constitution.

ONE HUNDRED THIRTY:	The hiring of Mignone and O'Shea, which allowed them to be in a position to harm the public through their disregard for policies and procedures, has caused the plaintiff severe emotional harm and a deprivation of his constitutional rights.

ONE HUNDRED THIRTY FIRST:	The County and SCPD knew, or should have known, that the above-named individuals had the propensity of for egregious acts of mistreatment against the public.

ONE HUNDRED THIRTY SECOND: Such negligence was committed on the SCPD's premises, in that the scene of the accident that plaintiff was photographing became the premises of the SCPD once SCPD officers and detectives arrived on the scene.

ONE HUNDRED THIRTY THIRD: Defendants' acts of arresting plaintiff for exercising his Free Speech rights under the First Amendment resulted in plaintiff being deprived of his rights under the Due Process Clause of the Fourteenth Amendment, in that he was detained without probable cause, and punished without Due Process and Equal Protection of the law, and also inflicted with cruel and inhuman punishment in violation of the Eighth Amendment.

ONE HUNDRED THIRTY FOURTH: As a direct and proximate result of the misconduct of the defendants as aforesaid, the plaintiff has sustained, and continues to sustain, emotional harm as he no longer feels confident or comfortable when in view of a SCPD Officer.

ONE HUNDRED THIRTY FIFTH: The acts and conduct of the defendants alleged in the above stated claims for relief constitute prima facie tort, negligence, gross negligence, assault and battery, false arrest and unlawful imprisonment committed upon the plaintiff, as well as negligent hiring, retention and supervision.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1. For actual, compensatory, emotional and punitive damages to be determined by the trier(s) of fact on behalf of plaintiff and against all defendants jointly and severally for their violation of 42 U.S.C. §1983 in that defendants deprived plaintiff of his rights secured by the Due Process Clause of the Fourteenth Amendment to not be punished

without Due Process and Equal Protection of law or deprived of liberty without probable cause, and to be free from cruel and inhuman punishment under the Eighth Amendment.

  2. For actual, compensatory, emotional and punitive damages to be determined by the trier(s) of fact on behalf of plaintiff and against all defendants jointly and severally for the torts of false arrest, unlawful imprisonment, prima facia tort, negligence, gross negligence, assault and battery, and negligent hiring, retention and supervision of employees and agents.

  3. For the equitable relief for the immediate expunging of plaintiff's arrest, and record, as well as corrective action for all Suffolk County Police Officers involved in said wrongdoing.

  4. For all reasonable attorneys fees pursuant to 42 U.S.C. §1988 and for the costs and disbursements of this action.

  5. For other further relief as appears reasonable and just.

Dated: Islandia, New York
   April 2, 2013       SCOTT MICHAEL MISHKIN, PC

           By: _____
             Scott Michael Mishkin, Esq. SMM 3687
             One Suffolk Square, Suite 240
             Islandia, New York  11749
             Telephone: (631) 234-1154